IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST SYSTEMS | § | |
| TECHNOLOGY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-2152-D |
| VS. | § | |
| | § | |
| KOH YOUNG AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this diversity action brought by plaintiff Southwest Systems Technology, Inc. ("Southwest Systems")—a sales representative—to collect unpaid commissions from defendant Koh Young America, Inc. ("KYA"), both parties move for partial summary judgment. Concluding that Southwest Systems has not met the heavy beyond peradventure standard with respect to its breach of contract claim, the court denies its motion for partial summary judgment. The court denies KYA's motion for partial summary judgment as moot because it is addressed to a claim that Southwest Systems has now withdrawn.

I

KYA is a wholly owned subsidiary of Koh Young Technology, Inc. ("KYT").[1] KYT

---

[1]Because both parties move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

is a manufacturer of three-dimensional automated measuring and inspection instrumentation used by companies manufacturing semi-conductors and assembling products such as circuit boards. According to KYA, in 2005 KYT made a large sale of its Solder Paste Inspection ("SPI") systems to Flextronics International ("Flextronics"), a global manufacturer of electronic devices and components, for installation at its Austin, Texas manufacturing facility ("Flextronics-Austin"). KYA maintains that, since 2006, it and KYT have regularly communicated and conducted business with Flextronics and Flextronics-Austin in transactions all over the world.

According to KYA, Flextronics' purchase of KYT's SPI systems in 2005 prompted KYT to establish an office in the United States. In 2010 KYT incorporated its U.S. branch as KYA, and KYA has since served as KYT's sales and service agent for North, Central, and South America.

In 2010 KYA began negotiations with Southwest Systems to become one of its sales representatives for a region that included the state of Texas. The parties agree that a Sales Representative Agreement ("Agreement") was in place as of September 2012.[2] Under the terms of the Agreement, Southwest Systems was to seek and locate potential customers in its territory (which included Texas, Oklahoma, Arkansas, and Louisiana), and it was to be

---

[2]KYA contends that the timing of KYA and Southwest Systems' execution of the Agreement "is hotly disputed, and remains the subject of on-going discovery." D. 2-15-16 Br. 2 (footnote omitted).

paid commissions on sales for which it was responsible.[3]

Southwest Systems maintains that it performed its duties under the Agreement, which included using its best efforts to promote sales of Koh Young products in its assigned territory.  It also contends that, at the time Southwest Systems and KYA entered into the Agreement, KYA's competitor, Parmi, was Flextronics-Austin's selected vendor for SPI product models, but that during a 2012 convention and in-house evaluation that followed, Southwest Systems was able to convince Flextronics-Austin that KYT's products were superior, and, as a result of Southwest Systems' efforts, Flextronics-Austin purchased KYT products instead of Parmi products.  Southwest Systems contends that KYA's General Manager, Bill Astle ("Astle"), told Southwest Systems' President, Dee Claybrook ("Claybrook"), that Claybrook was directly responsible for KYA's obtaining the long-sought-after Flextronics-Austin purchases; that Southwest Systems had helped KYA gain Flextronics-Austin's business and establish KYT on Flextronics-Austin's approved vendor list; and that Southwest Systems had earned the commissions on the KYT sales to Flextronics-Austin and would be paid a 5% commission on those sales.

KYA relies on a different version of these events.  According to KYA, in July 2011 Flextronics-Austin informed KYT and KYA that it was undertaking a capital investment program to upgrade its three-dimensional automated measuring and inspection

---

[3]The Agreement states that "a commission is earned by [Southwest Systems] when shipment and invoicing occurs on an order for which [Southwest Systems] was responsible." D. 2/16/16 App. 58.

instrumentation and was interested in evaluating KYT's next generation SPI systems.  For several months, numerous KYA and KYT sales and technical personnel worked with Flextronics-Austin to support the evaluation of KYT's next generation SPI systems and to tailor these systems to Flextronics-Austin's specific requirements.  When Flextronics-Austin concluded its evaluation of KYT's SPI systems, it placed orders.   In October 2012 Flextronics-Austin requested an evaluation of KYT's new Automated Optical Inspection ("AOI") systems as part of its capital investment program.  During the months that followed, KYA sales and technical personnel and numerous KYT personnel provided onsite support for the formal evaluation and installation of KYT's AOI systems at Flextronics-Austin. During this evaluation, KYT's AOI systems were the only AOI products that Flextronics-Austin evaluated.  When Flextronics-Austin concluded its evaluation of KYT's AOI systems, it ordered them.  KYA alleges that no Southwest Systems personnel were involved in either of these product evaluations.

In December 2013, allegedly as part of a "house-cleaning," KYA terminated its Agreement with Southwest Systems.  In response, Southwest Systems made a demand for payment of commissions from any and all sales to Flextronics-Austin during the term of the Agreement.   KYA rejected Southwest Systems' demand on the ground that Southwest Systems had not been responsible for Flextronics-Austin's orders, as required by the Agreement.  Southwest Systems then sued KYA in state court, alleging claims for breach of contract and quantum meruit and seeking damages under the Texas Sales Representative Act ("TSRA"), Tex. Bus. & Com. Code Ann. §§ 54.001-06.  Southwest Systems contends that

its efforts resulted in sales by KYT to Flextronics-Austin in the amount of $2,526,712.08;

that KYA has only paid it commissions on two of the sales; that commissions were not paid

on its remaining sales to Flextronics-Austin (totaling $2,043,912.04); that under the terms

of the Agreement, Southwest Systems is entitled to a commission at a rate of 5% of *all* sales

made by KYT or KYA to Flextronics-Austin; and that after applying the 5% commission rate

to $2,043,912.04, Southwest Systems is entitled to a commission of $102,195.60.

KYA removed the case to this court based on diversity jurisdiction. Southwest

Systems and KYA both move for partial summary judgment.

## II

When a party moves for summary judgment on a claim on which the opposing party

will bear the burden of proof at trial, the moving party can meet its summary judgment

obligation by pointing the court to the absence of admissible evidence to support the

opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the

moving party does so, the opposing party must go beyond its pleadings and designate specific

facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence

is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce

proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen*

*Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).

Summary judgment is mandatory if the opposing party fails to meet this burden. *Little*, 37

F.3d at 1076.

When a party moves for summary judgment on a claim on which it will have the burden of proof at trial, however, it "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Southwest Systems moves for partial summary judgment on its claim for breach of contract.

A

The Agreement provides, in pertinent part: "[a] commission is earned by [Southwest Systems] when shipment and invoicing occurs on an order for which [Southwest Systems] was responsible." D. 2/16/16 App. 58. Southwest Systems contends that, as a result of its efforts, Flextronics-Austin purchased the KYT products set out in the purchase orders attached to Southwest Systems' summary judgment motion. It posits that it fully performed

- 6 -

under the Agreement; that Astle praised Southwest Systems' sales efforts and stated that Southwest Systems had earned its commission on sales of KYT products to Flextronics-Austin; that KYA has only paid Southwest Systems on two of the sales of KYT products to Flextronics-Austin; that the unpaid commissions, coupled with KYA's admission that Southwest Systems is entitled to a commission, is undisputed evidence that KYA has breached the Agreement; and that Southwest Systems has been damaged in the amount of $102,195.60, which is the 5% commission owed on sales to Flextronics-Austin resulting from Southwest Systems' sales efforts.

KYA responds that the Agreement unambiguously provides that, to earn a 5% commission, Southwest Systems must have been responsible for the purchase orders from Flextronics-Austin, and that the summary judgment evidence establishes that Southwest Systems was *not* responsible for Flextronics-Austin's purchases of SPI and AOI systems in 2012 and 2013. KYA challenges as hearsay the statements made by Astle, noting that Astle made the statement that Claybrook was responsible for the AOI and SPI sales to Flextronics-Austin *after* he had left KYA.[4] To the extent Southwest Systems relies on the two payments that KYA made to Southwest Systems after Flextronics-Austin placed its initial order of SPI and AOI systems as evidence that Southwest Systems was responsible for the Flextronics-Austin sales transactions, KYA contends that those payments were not commissions earned under the Agreement. KYA maintains that these were 3% payments made by Astle before

---

[4]Astle now works for a KYA competitor for whom Southwest Systems is a sales representative.

he left KYA, "purportedly in recognition of [Southwest Systems'] services or support of KYA and KYT's efforts, and not because [Southwest Systems] was responsible for those purchase orders." D. 2/15/16 Br. 9. Finally, KYA argues that, at a minimum, there are genuine issues of material fact on the question whether Southwest Systems was "responsible for" any of the sales of KYT products to Flextronics-Austin: Southwest Systems did not introduce Flextronics-Austin to KYT or KYA; KYT and KYA have done business with Flextronics and Flextronics-Austin since 2005; KYT has been on Flextronics' approved vendor list for SPI systems since long before Southwest Systems became KYA's sales representative; not one purchase order or email transmitting purchase orders mentions Southwest Systems; Southwest Systems has not produced a single invoice to KYA for alleged commissions due; no Southwest Systems personnel were involved with Flextronics-Austin's product evaluation in 2011; no Southwest Systems personnel were involved in Flextronics-Austin's October 2012 evaluation of KYT's AOI systems; and in all of the emails (particularly emails transmitting or following up on purchase orders for AOI systems), Southwest Systems does not appear as any kind of participant, let alone a sales representative responsible for the purchase orders.

Southwest Systems argues in reply that the declaration of Dongchul "Denis" Kang ("Kang"), on which KYA relies to oppose Southwest Systems' motion for summary judgment, is a sham, contradicts Kang's prior deposition testimony[5] (in which Kang was

---

[5]When Southwest Systems filed its reply brief, it filed a supporting appendix without leave of court. KYA then filed a motion to strike Southwest Systems' reply appendix. In

acting as the KYA corporate representative), and is insufficient to create a genuine issue of material fact. Southwest Systems also challenges various aspects of the declaration of Sehyun "Danny" Han ("Han"), on which KYA also relies to oppose Southwest Systems' summary judgment motion. In short, Southwest Systems argues that prior deposition testimony establishes that it was Astle "whose responsibility it was to make a decision on who was to receive the commission," P. 2/29/16 Reply 6, and because Astle has stated that Southwest Systems was responsible for the sales and "[a]ll of the credible evidence supports [Southwest Systems'] claim that it effectuated the sales," *id.* at 10, Southwest Systems is entitled to summary judgment.

B

Under Texas law, "a claim for breach of contract requires a showing of (1) the existence of a valid contract, (2) that the plaintiff performed his duties under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach." *Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law)). Under Arizona law, the elements of a claim for breach

---

its response to KYA's motion to strike, Southwest Systems moved, in the alternative, for leave of court to accept Southwest Systems' reply appendix. The court then issued an order stating that it would not consider Southwest Systems' reply appendix in deciding Southwest Systems' motion for partial summary judgment unless Southwest Systems first obtained leave of court to file the appendix. The court also denied KYA's motion to strike as moot. Because consideration of the evidence in KYA's reply appendix does not change the outcome of KYA's summary judgment motion, the court grants KYA's alternative motion for leave of court to accept plaintiff's reply appendix.

of contract are (1) the existence of a contract, (2) breach, and (3) resulting damages.  *First Am. Title Ins. Co. v. Johnson Bank*, ___ P.3d ___, 2016 WL 3247545, at *5 (Ariz. June 13, 2016) (citing *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975)).[6]  The parties only dispute whether KYA breached the terms of the Agreement by not paying Southwest Systems a 5% commission on its sales to Flextronics-Austin.  The crux of the dispute thus centers on whether Southwest Systems was "responsible for" any sales of KYT products to Flextronics-Austin for which it was not paid a commission.

Southwest Systems has not met the heavy beyond peradventure standard with respect to its breach of contract claim.  It has failed to demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law as to this claim.  And by challenging the credibility of the evidence on which KYA relies in support of its summary judgment response, Southwest Systems has demonstrated that, in fact, there are significant factual disputes that preclude the court from granting summary judgment in Southwest Systems' favor.  Moreover, Southwest Systems has not established as a matter of law that it was "responsible for" the Flextronics-Austin purchase orders attached to its motion.  Accordingly, the court denies Southwest Systems' motion for partial summary judgment on its breach of contract claim.

---

[6]Although the Agreement provides that Arizona law governs it provisions, the parties cite both Texas and Arizona law.

IV

KYA moves for partial summary judgment on Southwest Systems' claim under the TSRA on the ground that the sales involved in this lawsuit do not qualify as "wholesale" sales as required by the TSRA.  In response, Southwest Systems has withdrawn its claim under the TSRA.  Accordingly, the court denies KYA's motion for partial summary judgment as moot.

\*    \*    \*

For the foregoing reasons, the court denies Southwest Systems' motion for partial summary judgment and denies KYA's motion for partial summary judgment as moot.

**SO ORDERED**.

July 13, 2016.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE